Opinion issued March 1, 2007 






 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-01069-CV
__________
 
EL NAGGAR FINE ARTS FURNITURE, INC. AND AHMED EL NAGGAR,
Appellants
 
V.
 
INDIAN HARBOR INSURANCE COMPANY, Appellee
 

 
 
On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2005-07980A
 

 
 
O P I N I O N
          We deny appellee’s motion for rehearing. Tex. R. App. P. 49 .3. We withdraw
our January 11, 2007 opinion, substitute this opinion in its place, and vacate our
January 11, 2007 judgment.
          Appellants, El Naggar Fine Arts Furniture, Inc. and Ahmed El Naggar
(collectively, “El Naggar”), challenge the trial court’s rendition of summary judgment
in favor of appellee, Indian Harbor Insurance Company (“Indian Harbor”), in El
Naggar’s suit against Indian Harbor to recover insurance proceeds. In two issues, El
Naggar contends that the trial court erred in granting Indian Harbor’s summary
judgment motion on the ground of res judicata. We reverse and remand. 
Factual and Procedural Background
          On February 4, 2005, El Naggar filed the instant suit, alleging that Fred Bell,
Traxel Construction, Inc. (“Traxel”), and General Agents Insurance Company of
America (“GAINSCO”), all of whom are not parties to this appeal, attempted to
defraud El Naggar out of insurance coverage for damages it sustained in the course
of building a furniture store. El Naggar alleged that it retained Traxel to work on the
project because of Traxel’s representation that it possessed insurance coverage issued
by several companies, including GAINSCO. EL Naggar allowed the construction to
proceed in reliance on GAINSCO’s declaration of insurance. El Naggar attached to
its petition a copy of a GAINSCO builder’s risk policy, which identified El Naggar
as the insured, and El Naggar alleged that Traxel was identified as an “additional
insured” under this policy. El Naggar further alleged that, after sustaining damages
during construction and demanding payment, Traxel and GAINSCO conspired to
defraud El Naggar by entering into an agreement to “buy back” the promised
insurance coverage. El Naggar asserted claims for fraud and insurance code
violations against Traxel and GAINSCO. El Naggar also sought declaratory relief
against another insurer, Great American Insurance Company of New York (“Great
American”), regarding Great American’s liability under another insurance policy that
identified El Naggar as the named insured.
          In regard to Indian Harbor, El Naggar alleged that Great American and various
other insurers, including Indian Harbor, issued policies containing “other insurance
provisions” relevant to “the responsibility and coverage owed.” El Naggar joined
Indian Harbor and these other insurers “for declaratory relief as to [their]
responsibilities to [El Naggar] under the co-insurance and/or other insurance
provisions relating to [El Naggar’s] direct claims.” El Naggar requested “[a]n
adjudication of the co-insurance and other insurance responsibilities between the
respective defendants . . . [and] as to the respective rights owed to [El Naggar]
because of its direct insurance agreement with [Great American] and the provisions
in that policy requiring other insurers, such as . . . [Indian Harbor,] to be responsible
. . . .”



          Prior to the initiation of the instant suit, El Naggar had filed a separate suit
against Traxel and others for construction defects (the “construction defect
litigation”).


 On or about January 24, 2005, a jury trial commenced, and, at the
conclusion of trial, the jury returned a verdict in favor of El Naggar and against
Traxel in the construction defect litigation, found against Traxel on the basis of a
negligence claim, and apportioned 20% of the responsibility to Traxel. On August
8, 2005, the trial court in the construction defect litigation signed a final judgment
awarding actual, additional, and exemplary damages of over $2 million in favor or El
Naggar and against Traxel. The record reveals that Traxel was an additional named
insured under a commercial general liability policy issued by Indian Harbor.
          During the pendency of the construction defect litigation, in October 2004,
Indian Harbor filed a federal declaratory judgment action against Traxel in the United
States District Court for the Southern District of Texas (the “federal declaratory
judgment action”).


 Indian Harbor did not name El Naggar in the federal declaratory
judgment action, and El Naggar did not intervene in the action, although Indian
Harbor presented evidence that El Naggar had actual knowledge of the action. After
Traxel failed to appear in the federal declaratory judgment action, on January 26,
2005, subsequent to commencement of trial in the construction defect litigation, but
before the trial court signed its final judgment, the federal court entered a default
judgment against Traxel, deeming Indian Harbor’s allegations to be admitted and
rendering a declaratory judgment that Indian Harbor “owe[d] no duty to defend or
indemnify” Traxel in the construction defect litigation. 
          After obtaining the federal declaratory relief, Indian Harbor filed a summary
judgment motion in the instant suit, noting that it had obtained a final judgment of
“no coverage” before El Naggar obtained a final judgment in the construction defect
litigation. Indian Harbor also noted that El Naggar had “actual knowledge” of the
federal declaratory judgment action and “had the opportunity to intervene or appeal
the judgment,” but did not do so. Indian Harbor asserted that El Naggar’s request for
a determination of Indian Harbor’s obligations under its policy in the instant suit
should be dismissed based on the fact that “it has already been judicially determined
that Indian Harbor has no obligation to its insured [Traxel] under the policy, [and] it
cannot, as a matter of law, owe any obligation to Great American, GAINSCO, or any
other insurer under an ‘other insurance’ provision or otherwise.”
          On August 26, 2005, the trial court below rendered summary judgment in favor
of Indian Harbor and against El Naggar. The trial court then severed El Naggar’s
claims against Indian Harbor from its claims against the other insurers.
Standard of Review
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). We may affirm a summary judgment only when the record shows that a
movant has disproved at least one element of each of the plaintiff’s claims or has
established all of the elements of an affirmative defense as to each claim. Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). When, as in this case,
a summary judgment does not specify the grounds on which the trial court granted it,
the reviewing court will affirm the judgment if any theory included in the motion is
meritorious. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.
1995); Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. 
App.—Houston [1st Dist.] 1995, writ denied). However, a summary judgment must
stand or fall on the grounds expressly presented in the motion. McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 339–41 (Tex. 1993).
Res Judicata
          In two issues, El Naggar argues that the trial court erred in granting Indian
Harbor’s summary judgment motion on the ground of res judicata because “El Naggar
was neither a party, nor in privity with a party, to the federal declaratory judgment
action.”


 Indian Harbor counters that El Naggar’s declaratory claim against it in the
insurance litigation was barred “since Indian Harbor’s obligations under the policy
had already been determined by a court of competent jurisdiction.” 
          The preclusive effect of a federal judgment is determined by federal law. John
G. and Marie Stella Kenedy Mem’l Found. v. Dewhurst, 90 S.W.3d 268, 287 (Tex.
2002); see also Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 718 (Tex.
1990) (“Since the first suit was decided in federal court, . . . federal law controls the
determination of whether res judicata will bar a later state court proceeding”). Under
federal law, the doctrine of res judicata consists of four elements: (1) the parties must
be identical in both suits; (2) the prior judgment must have been rendered by a court
of competent jurisdiction; (3) there must have been a final judgment on the merits;
and (4) the same cause of action must be involved in both cases. In re Intelogic
Trace, Inc., 200 F.3d 382, 386 (5th Cir. 2000). Here, the parties’ dispute focuses on
the first element, i.e., the identity of the parties. 
          Although El Naggar was not a party to the federal declaratory judgment action,
“strict identity of parties is not necessary” for the application of res judicata, and a
non-party may assert res judicata so long as it is in “privity” with a named party in the
original action. See Russell v. SunAmerica Securities, Inc., 962 F.2d 1169, 1173 (5th
Cir. 1992) (“A non-party defendant can assert res judicata so long as it is in ‘privity’
with the named defendant”). “Privity connotes those who are in law so connected
with a party to the judgment as to have such an identity of interest that the party to the
judgment represented the same legal right.” Nat’l Am. Ins. Co. v. Breaux, 368 F.
Supp. 2d 604, 621 (E.D. Tex. 2005). Furthermore, privity is recognized as a broad
concept, requiring a court to consider the surrounding circumstances to determine
whether a finding of privity is justified. Russell, 962 F.2d at 1173. Thus, we must
determine whether El Naggar can be said to be in privity with Traxel so as to preclude
El Naggar from bringing its claims against Indian Harbor in the state court insurance
litigation based on Traxel’s default in the federal declaratory judgment action. 
          We find guidance in the United States Supreme Court’s opinion in Maryland
Casualty Company v. Pacific Coal & Oil Company, 312 U.S. 270, 61 S. Ct. 510
(1941). In Maryland Casualty Company, as here, an insurer brought suit in federal
court seeking a declaration that it was not bound to indemnify or defend its insured
in a state court suit brought by an injured third party. Id. at 271–72, 61 S. Ct. at 511. 
However, unlike the instant case, the insurer in Maryland Cas. Co. brought its
declaratory judgment suit against both its insured and the injured third party. Id. The
injured third party sought to dismiss the declaratory judgment action because it did
not state a claim against him. Id. However, the Court held that the complaint did
present an “actual controversy” between the insurer and the injured third party, noting 
that the injured third party was seeking a judgment against the insured in the state
court and that the injured third party would have ultimately been permitted under the
relevant state law to proceed against the insurer after obtaining a final judgment
against the insured. Id. at 273, 61 S. Ct. at 273. In support of its holding that the
injured third party was a proper party in the declaratory judgment action, the Court
stated that to conclude otherwise would present the possibility “that opposite
interpretations of the policy might be announced by the federal and state courts.” Id.
at 274, 61 S. Ct. at 512–13. More specifically, the Court stated, “the federal court,
in a judgment not binding on [the injured third party], might determine that [the
insurer] was not obligated under the policy, while the state court, in a supplemental
proceeding by [the injured third party] against [the insurer], might conclude
otherwise.” Id. (emphasis added). Although the Court never directly referenced the
term “privity,” it stated that an injured third party would not properly be bound by a
declaratory judgment entered in an action between an insurer and its insured in which
the injured third party is absent. Id.  
          Federal courts have followed the basic principle of Maryland Casualty
Company in considering a number of other related issues, and, as in Maryland
Casualty Company, although their opinions do not directly reference the term
“privity,” they do direct us to a conclusion that an injured third party, like El Naggar,
should not be bound by a declaration obtained by an insurer against a defaulting
insured in an action in which the injured third party is not named. For example, in
Standard Accident Insurance Company v. Meadows, an injured third party sought to
dismiss an insurer’s federal declaratory judgment action against it on the basis that
the coverage dispute was already pending in state court. 125 F.2d 422, 423–24 (5th
Cir. 1942). The United States Court of Appeals for the Fifth Circuit, in holding that
a lower court erred in granting the motion to dismiss, stated, “It has been repeatedly
held in this circuit and elsewhere that whether an insurer is bound [under] an
automobile insurance policy by a judgment against its insured, presents a controversy
for declaratory judgment as between it, its insured, and the plaintiff.” Id. (emphasis
added). 
          Similarly, in Federal Kemper Insurance Company v. Rauscher, the United
States Court of Appeals for the Third Circuit held that an injured third party sued by
an insurer in a federal declaratory judgment action had standing to defend itself in the
declaratory judgment action despite the fact that the insured, who was also sued in the
action, failed to appear and defaulted. 807 F.2d 345, 353–54 (3d Cir. 1986); see also
Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1123 (5th Cir. 1981) (stating that
injured third parties, as “potential judgment creditors claiming liability in a state court
tort suit against” insured, who were named as defendants in insurer’s federal
declaratory judgment coverage action, could appeal court’s declaration that policy did
not cover insured); Hawkeye-Security Ins. Co. v. Schulte, 302 F.2d 174, 176–77 (7th
Cir. 1962) (holding that because actual controversy existed between insurer and
injured third party, district court erred in dismissing claim against injured third party
in federal declaratory judgment action after insured defaulted because doing so would
deny injured third party right to participate in case and contest insurer’s coverage
allegations); Am. Standard Ins. Co. of Wis. v. Rogers, 123 F. Supp. 2d 461, 467–68
(S.D. Ind. 2000) (finding injured third party to be both necessary and indispensable
party under Federal Rule of Civil Procedure 19 in insurer’s declaratory judgment
action regarding coverage); Assoc. Int’l Ins. Co. v. Crawford, 182 F.R.D. 623, 629–30
(D. Colo. 1998) (holding that actual controversy exists between insurer and injured
third party, injured third party is “necessary” party in insurer’s federal declaratory
judgment action regarding coverage, and injured third party’s “fundamental right” to
participate in controversy because of insured’s default could not be denied).
          The United States District Court for the Eastern District of Texas has recently
discussed the concept of privity in determining whether an injured third party is a
proper party to an insurer’s federal declaratory coverage action. Breaux, 368 F. Supp.
2d at 619–21. In Breaux, injured third parties filed a summary judgment motion
seeking dismissal of claims made against them in an insurer’s suit seeking a
declaration that it did not have a duty to indemnify or defend its insured against the
injured third parties’ state court claims. Id. at 607–08. The injured third parties
specifically argued that they had “no privity of contract” and that, because they were
only potential judgment creditors, there was no justiciable controversy. Id. at 620. 
The court held that the injured third parties were proper parties to the declaratory
judgment action and that the court was entitled to declare the insurer’s legal rights
and relations with respect to both its insured and the injured third parties. Id. The
court stated that because the injured third parties “derive their right, if any, to collect
insurance proceeds directly from the rights” of the insured, the injured third parties
were “deemed to be in privity by virtue of their shared legal interest.” Id. at 621. 
Although contractual privity generally supports an insurer’s ability to sue an injured
third party in a declaratory judgment action, it does not follow that it automatically
gives a res judicata effect to a judgment entered in a prior proceeding against an
injured third party who did not participate in that proceeding. 
          Here, Indian Harbor did not properly name El Naggar in its federal declaratory
judgment action, and the instant case focuses on the res judicata effect of the
declaratory judgment entered in federal court in El Naggar’s absence only after Traxel
defaulted. As the court in Breaux noted, “a declaratory judgment action brought by
an insurer is binding upon a third party beneficiary to a liability insurance policy if
properly joined as a party to such action.” Id. at 620 (citing State Farm Fire & Cas.
Co. v. Fullerton, 118 F.3d 374, 384 (5th Cir. 1997) (emphasis added)) .


 Here, the
parties agree that El Naggar was not joined in the federal declaratory judgment action,
and El Naggar was not required to intervene in the federal declaratory judgment
action in order to avoid any res judicata effect from the declaratory judgment. See
Martin v. Wilks, 490 U.S. 755, 763, 765, 109 S. Ct. 2180, 2185, 2186 (1989) (stating
that the “law does not impose upon any person absolutely entitled to a hearing the
burden of voluntary intervention in a suit to which he is a stranger,” that “[u]nless
duly summoned to appear in a legal proceeding, a person not a privy may rest assured
that a judgment recovered therein will not affect his legal rights,” and that “[j]oinder
as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the
method by which potential parties are subjected to the jurisdiction of the court and
bound by a judgment or decree” ) (internal quotation marks omitted); see also Kourtis
v. Cameron, 419 F.3d 989, 998 (9th Cir. 2005) (“There is no duty of mandatory
intervention imposed upon nonparties, and the decision not to intervene thus does not
expose a nonparty to the earlier proceedings’ preclusive effects.”); see also 18A
Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice and Procedure § 4452, at 399 (2d ed. 2002) (“Rules on intervention . . .
have not been drawn in compulsory terms. Intervention has been conceived as a
device that permits a nonparty to become a party when it wishes . . . .”).
          Indian Harbor apparently chose not to name El Naggar in the federal
declaratory judgment action, even though El Naggar had claims pending against its
insured, Traxel, in state court. El Naggar did not intervene and was not a party to the
federal declaratory judgment action. Accordingly, we hold that El Naggar was not
in privity with Traxel such that it could be precluded from bringing its claims against
Indian Harbor in the instant suit based on Traxel’s default in the federal declaratory
judgment action. We further hold that the trial court erred in granting Indian Harbor’s
summary judgment motion on the ground of res judicata.
          We must also consider two additional arguments presented by Indian Harbor
in its appellate brief. First, Indian Harbor asserts that summary judgment could have
been properly granted on the “alternative” ground that there “can be no coverage
obligation through ‘other insurance’ if there is no coverage obligation to the insured.” 
Indian Harbor asserts that this ground “does not depend on res judicata” and that “at
least a portion of El Naggar’s claims failed because there was no contractual
relationship between Indian Harbor” and the other insurers. However, Indian
Harbor’s summary judgment motion can only be fairly construed to raise the single
ground of res judicata. Whatever Indian Harbor may be attempting to argue on
appeal with regard to the “other insurance” or “co-insurance” provisions of its policy,
it is clear that its motion was based on its argument that it was not liable because it
was already judicially determined that it owed no obligations to Traxel under the
policy. To the extent that Indian Harbor sought summary judgment on another basis,
it neither presented it to the trial court in its motion nor has it clearly explained to this
Court the alleged alternative ground on which it was entitled to summary judgment. 
Second, Indian Harbor asserts that El Naggar lacked standing to assert its claims. 
Indian Harbor emphasizes that it obtained its “no coverage [default] judgment” at a
time when “El Naggar had no adjudicated rights against Traxel and therefore no
rights against Traxel’s Indian Harbor policy.” However, Indian Harbor’s standing
argument is simply a restatement of its res judicata argument, which we addressed
above. 
          Finally, although not referenced in its appellate briefing, Indian Harbor cited
to the trial court, as controlling authority, State Farm & Casualty Company v.
Fullerton, 118 F.3d 374 (5th Cir. 1997). In Fullerton, the Fifth Circuit considered
the preclusive effect of an insured’s guilty plea and subsequent criminal conviction
in a subsequent civil suit brought by the victim’s surviving family members. Id. at
376–77. The homeowner’s insurer, State Farm, filed a declaratory judgment action
in federal court seeking a declaration that it had no duty to indemnify or defend its
insured in the state court civil suit because his prior guilty plea established that his
acts were intentional and, thus, excluded from the policy’s coverage. Id. The court
held that the surviving family member plaintiffs were precluded from litigating the
issue of the insured’s intent based on a finding that the plaintiffs were in privity with
the insured “because of the derivative nature of their recovery under the policy.” Id.
at 377, 385. Fullerton is substantively distinguishable from the instant suit. 
Fullerton is based on the preclusive effect of an issue resolved by a guilty plea in a
state court criminal conviction in a subsequent civil suit. Thus, we agree with El
Naggar’s assessment that Fullerton was decided based on “unique policy concerns”
that support giving criminal convictions preclusive effect on subsequent civil
proceedings involving the same issues. Moreover, the Fullerton court, in
distinguishing Dairyland County Mutual Insurance Company v. Childress, 650
S.W.2d 770 (Tex. 1983), a prior Texas Supreme Court case that presents facts similar
to those presented in the instant case,


 held that Fullerton was distinguishable because
it did not involve “an insurer that failed to obtain declaratory relief against all
interested parties.” Id. at 385. Here, Indian Harbor, in forgoing its right to name El
Naggar in the federal proceeding, even though El Naggar had already filed suit
against Traxel, clearly failed to obtain relief against all interested parties. 
          We sustain El Naggar’s issues.  
 
 
 
                                                         Conclusion
          We reverse the judgment of the trial court and remand for proceedings
consistent with this opinion.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.