**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA, Plaintiff,**

v.

**ESI ERGONOMIC SOLUTIONS, LLC, et al., Defendants.**

**ESI Ergonomic Solutions, LLC, Plaintiff,**

v.

**National Union Fire Insurance Company Of Pittsburg, Pa, Garnishee.**

**Nos. CIV–03–2417–PHX–SRB, CIV–04–0010–PHX–SRB.**

United States District Court, D. Arizona.

Sept. 29, 2004.

Timothy J. Thomason, Maxine Mary Becker, Mariscal Weeks McIntyre & Friedlander PA, Steven Plitt, Joshua D. Rogers, Kunz Plitt Hyland Demlong & Kleifield PC, Phoenix, AZ, for Plaintiff.

Edward Moomjian, II, Chandler & Udall LLP, Tucson, AZ, Christopher Alan La-Voy, LaVoy & Chernoff PC, Phoenix, AZ, for Defendants.

## ORDER

BOLTON, District Judge.

These consolidated actions arise out of class representative ESI Ergonomic Solutions, LLC's efforts to collect on a judgment entered against United Artists Theatre Circuit, Inc. ("United Artists") in litigation filed in Maricopa County Superior Court. Because the Court lacks subject matter jurisdiction, it remands one of the actions and dismisses the other.

## BACKGROUND

In August 1999, United Artists contracted with American Blast Fax, Inc. ("ABF"), a company that distributes advertisements by fax, to send a one-page advertisement for discount movie ticket packages. *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 96, 50 P.3d 844, 846 (Ariz.Ct.App.2003). The next month, ABF sent the advertisement to about 90,000 fax machines in the Phoenix area. *Id.* ESI received the advertisement and instituted class-action litigation in Maricopa County Superior Court alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1]

---

1. The TCPA makes it unlawful for persons within the United States to, among other

*Id.* ESI requested statutory damages of $500.00 per violation on behalf of the class as well as treble damages. *Id.* It also requested injunctive relief. *Id.*

In response, United Artists filed a declaratory judgment action in this District, alleging that the TCPA violated the First Amendment *See United Artists Theatre Circuit, Inc. v. FCC,* 147 F.Supp.2d 965 (D.Ariz.2000). ESI moved to dismiss the declaratory judgment action, arguing that federal courts lacked subject matter jurisdiction over TCPA claims and that in any event abstention was appropriate. *Id.* at 970. The matter was assigned to Judge Broomfield. Citing a decision rendered by the Ninth Circuit after United Artists' filed its complaint, Judge Broomfield noted that state courts have exclusive subject matter jurisdiction over TCPA claims. *Id.* at 972. From there, he found that the court lacked subject matter jurisdiction to hear United Artists' defensive declaratory judgment action. *Id.* at 973–976. To the extent that jurisdiction existed, he found that abstention was appropriate. *Id.* at 977–79.

In September 2000, United Artists filed for Chapter 11 bankruptcy, and all judicial proceedings against it were automatically stayed. *ESI Ergonomic Solutions, LLC,* 203 Ariz. at 96, 50 P.3d at 846. While in bankruptcy, United Artists sent notice to the recipients of the fax advertisement that any person having a potential claim should file a proof of claim in the bankruptcy proceedings. *Id.* ESI filed a proof of claim on behalf of the putative class and moved for relief from the automatic stay. *Id.* Upon the stipulation of the parties, the bankruptcy court lifted the automatic stay to permit the parties to pursue the litigation in Arizona. *Id.* The order specifically provided that any judgment or settlement could be executed only against United Art-

ists' insurance policies and not against the company itself. *Id.*

After the bankruptcy court lifted the automatic stay, the state court action continued. After class certification and a summary judgment proceeding, the trial court entered judgment against United Artists and in favor of ESI and the absent class. (11/07/03 Order, attached as Exh. 2 to ESI's Mot. to Dismiss [Doc. # 3] ). The court found that at least 57,600 class members received the faxed advertisement, including class representative ESI, and entered judgment in favor of each class member for the statutory amount of $500.00 plus interest at 10% per annum. The total amount of the judgment is $40,446,246.58. (*Id.*) The court saved the questions of whether the defendants sent more than 57,600 faxes and whether it should treble damages for another day, but made clear that the judgment was final and appealable notwithstanding the fact that it did not dispose of all of the claims. (*Id.*)

On December 5, 2003, ESI filed a garnishment action in Arizona state court against United Artists' insurer, National Union Fire Insurance Company ("National Union"), seeking to collect on the judgment. That same day, National Union filed a declaratory judgment action in this District against United Artists and class representative ESI, alleging diversity jurisdiction and seeking a determination that it has no obligation to indemnify United Artists. The declaratory judgment action was assigned to Judge Roslyn O. Silver and numbered CIV–03–2417. On January 2, 2004, ESI moved to dismiss the action for lack of subject matter jurisdiction, arguing that no case or controversy existed with respect to United Artists and that National Union could not acquire diversity

things, "use any telephone facsimile machine, computer, or other device to send an unsolic-
ited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C).

jurisdiction over ESI and the class without impermissibly aggregating claims; alternatively, ESI asked the Court to abstain in favor of the state court garnishment action. (ESI's Mot. to Dismiss at 3–12 [Doc. # 3].) ESI's Motion to Dismiss is still pending.

On January 5, 2004, National Union removed ESI's garnishment action to federal court, again alleging diversity jurisdiction. (Not. of Removal at 1–2 [CIV–04–0010 Doc. # 1].) The matter was assigned to Judge Earl H. Carroll and numbered CIV–04–0010. On January 6, 2004, ESI moved to remand the garnishment action, arguing (i) that the federal court could not assert diversity jurisdiction without impermissibly aggregating claims, and (ii) that not all of the defendants had consented in the removal. (ESI's Mot. to Remand at 3–4 [CIV–04–0010, Doc. # 3].) It also asked for costs and attorneys' fees under 28 U.S.C. §§ 1447(c) and 1927. (Id. at 4.) A few weeks later, Judge Carroll recused himself and this Court received the assignment. On February 2, 2004, National Union moved in CIV–03–2417 to consolidate the declaratory judgment action with the garnishment action. (Mot. to Consolidate at 1 [Doc. # 6].) ESI did not object to consolidation.

On February 11, 2004, pursuant to the stipulation of the parties, the Court remanded the non-garnishment portion of the case to Arizona state court (the garnishment action had been filed in the same case number as the underlying state court litigation and the entire litigation was removed when National Union filed its Notice of Removal). On July 30, 2004, the Court denied ESI's Motion to Remand, rejecting ESI's unanimous consent argument and finding that the non-aggregation rule did not apply. (07/30/04 Order at 5–6 [CIV–04–0010 Doc. # 17].)

Judge Silver granted ESI's Motion to Consolidate in an Order dated August 30, 2004 [Doc. # 19]. On September 16, 2004, Judge Silver recused and the consolidated case was randomly reassigned to this Court. This Order considers whether subject matter jurisdiction exists over National Union's declaratory judgment action and reconsiders whether subject matter jurisdiction exists over ESI's garnishment action. Although the Court previously found jurisdiction over the garnishment action, a court has discretion to reconsider its orders. See Barber v. Hawaii, 42 F.3d 1185, 1198 (9th Cir.1994). Further, it always has jurisdiction to consider its jurisdiction. See Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("[S]ubject matter jurisdiction delineations must be policed by the courts on their own initiative even at the highest level.")

## DISCUSSION

The Court lacks subject matter jurisdiction over both ESI's garnishment action and National Union's declaratory judgment action. It will remand the garnishment action and dismiss the declaratory judgment action.

### I. The Garnishment Action

### A. Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has diversity jurisdiction over any civil action between citizens of different states as long as the amount in controversy exceeds $75,000.00, excluding interest and costs. 28 U.S.C. § 1332. If

before final judgment it appears that a district court lacks subject matter jurisdiction over a case that has been removed, the case must be remanded. 28 U.S.C. § 1447(c).

A strong presumption exists against removal jurisdiction, and the party that seeks to remain in federal court has the burden of proof on a motion to remand to state court. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997). In cases in which the existence of diversity jurisdiction depends on the amount in controversy, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Id.* If the complaint is silent on the amount of damages claimed, "the court may consider facts in the removed petition and may require the parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." *Id.* (quotation omitted).

## B. Analysis

■ The Court may not exercise diversity jurisdiction over the garnishment action because class representative ESI's $500.00 claim does not meet the threshold $75,000.00 amount in controversy and the absent class members' $500.00 claims may not be aggregated to satisfy the jurisdictional amount.

"It has long been the rule in Supreme Court doctrine that claims by multiple plaintiffs may not be aggregated unless the claims are 'joint' or 'common and undivided.'" 15 *Moore's Federal Practice* § 102, 108[3][b] (Matthew Bender 3d ed.2004). In *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81 (1911), the Court stated the non-aggregation rule as follows: "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential

that the demand of each be of the requisite jurisdictional amount." *Id.* at 40, 32 S.Ct. 9. It also recognized an oft-stated exception to the rule: "[W]hen several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Id.* at 40–41, 32 S.Ct. 9. Based on these principles, the Court held that two plaintiffs in *Troy Bank* could not aggregate claims under distinct promissory notes made payable to each plaintiff by the defendant, but could aggregate their claims based on a vendor's lien that they jointly owned. *Id.* at 41, 32 S.Ct. 9.

In *Snyder v. Harris*, 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Court rejected the contention that amendments to Rule 23 of the Federal Rules of Civil Procedure eliminated the non-aggregation rule for class actions. It reaffirmed the rule that separate and distinct claims of two or more plaintiffs may not be aggregated to satisfy the jurisdictional amount. *Id.* at 335, 89 S.Ct. 1053. The Court noted, however, that aggregation has been permitted in two circumstances: "(1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* Thus, *Snyder* allows aggregation when two or more plaintiffs join together in one suit out of necessity because they have one right to enforce, but does not allow aggregation in class actions when plaintiffs with separate and distinct rights are allowed to join similar claims for judicial economy. *Snyder*, 394 U.S. at 334–35, 89 S.Ct. 1053; *see also Zahn v. International Paper Co.*, 414 U.S. 291, 298–299, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

In its Response to ESI's Motion for Remand, National Union argued that the question of aggregation is irrelevant because ESI seeks to recover a "lump-sum judgment" of more than $40,000,000.00 as a single judgment creditor. (National Union's Resp. to ESI's Mot. for Remand at 5–6 [CIV–04–0010 Doc. # 11].) In its July 30 Order, the Court agreed with National Union's argument. Citing *Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir.1986), it noted that "the Court looks to Writ of Garnishment to determine whether the amount in controversy has been satisfied." (07/30/04 Order at 6 [CIV–04–0010 Doc. # 17].) Looking to the Writ, the Court found that the garnishment action satisfied the jurisdictional amount because "ESI and the class clearly seek to enforce a judgment of approximately $40,000,000, plus interest calculated at ten percent per annum against National Union." (*Id.*)

This finding was in error. As ESI pointed out, the garnishment action is simply an extension of the class action brought by ESI and the absent class members against United Artists. (ESI's Reply in Supp. of Mot. for Remand at 2 [CIV–04–0010 Doc. # 14].) The state court granted judgment in favor of 57,600 claimants, including ESI, for $500.00 each plus interest. ESI did not receive a $40,000,-00.00 judgment, but rather a $500.00 one. As the caption of the Writ of Garnishment makes clear, ESI brought the garnishment action on behalf of itself and "all others similarly situated"—i.e., the absent class members. (Writ of Garnishment at 1, attached as Exh. 1 to Not. of Removal [CIV–04–0010 Doc. # 1] ). Through the action, ESI and the class seek to recover a multiplicity of $500.00 awards from National Union. The aggregation issue is not irrelevant: whether the Court may exercise diversity jurisdiction over the garnishment action depends entirely on whether the class members' claims to the insurance proceeds may be aggregated.

■ The class members' claims may not be aggregated: the "common and undivided interest" exception to the non-aggregation rule does not apply here. The exception to the non-aggregation rule applies only "where a defendant owes an obligation to a group of plaintiffs as a group and not to the individuals severally." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir.2001). It typically arises in cases where there is a "single indivisible res" jointly owned by the plaintiffs that "creates an undivided obligation to them." *Id.* at 945. In *Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541, 547 (1984), for instance, the Ninth Circuit allowed aggregation of a corporation's shareholders' claims for breach of fiduciary duty because the shareholders could not recover in their individual capacities under the governing law, but instead had to file a derivative suit on behalf of the corporation as a whole. The shareholders' common and undivided interest was their interest in the corporation's assets and their right to share its dividends. *Id.* at 546.

By contrast, where the claims of the class members are "cognizable, calculable, and correctable individually," the class members (or in this case the party seeking to remove) may not aggregate claims to meet the amount in controversy. *Id.* at 945. *Potrero Hill Community Action Committee v. Housing Authority*, 410 F.2d 974, 978 (9th Cir.1969) is illustrative. In that case, a group of tenants sought a declaration that the San Francisco Housing Authority was under a duty to maintain their premises in a decent, safe, and sanitary condition and that they had no obligation to pay rent in the meantime. *Id.* at 975. No individual claim reached the $10,000.00 jurisdictional minimum in effect at the time. *Id.* at 978. The Ninth

Circuit held that the tenants' claims could not be aggregated because they derived from the tenants' individual leases, not from rights that they held as a tenants' group. *Id.*

Unlike the plaintiffs in *Eagle,* ESI and the class did not suffer a single indivisible group injury. Rather, they have separate and distinct claims both in the underlying TCPA case and in this ancillary garnishment proceeding. ESI and the class members may have combined their $500.00 claims in the interests of convenience and judicial economy, but this does not mean that their claims fall under the common and undivided interest exception to the non-aggregation rule. Each class member had an individual and independently enforceable statutory right to assert against United Artists. The single judgment is an artifact of the class action and not a characteristic of the plaintiffs' interest in the judgment. The class members' shared interest "has nothing to do with whether—prior to the litigation—they jointly held a single title or right in which each possessed a common and undivided interest." *Gibson,* 261 F.3d at 945. The common and undivided interest exception has no application, where as here, "[r]ecovery by one plaintiff ... would not, as a legal matter, either preclude or reduce recovery by another ...." *Id.*

■ While a suit involving an insurance policy may in some instances present a "paradigmatic case" of a "single indivisible res" allowing aggregation, *In re Ford Motor Co.,* 264 F.3d 952, 959 (9th Cir.2001), this is not such a case. A paradigmatic case exists only if the parties jointly possess a single enforceable title or right in the res. *Troy Bank,* 222 U.S. at 40–41, 32 S.Ct. 9. Stated differently, a common and undivided interest exists among the parties only if the matter "cannot be adjudicated without implicating the rights of everyone involved in the res." *In re Ford Motor*

*Co.,* 264 F.3d 952, 959 (9th Cir.2001) (quotation omitted). The exception does not apply where (i) the plaintiffs shared no common interest in the object of the controversy before litigation, and (ii) where each plaintiff would be entitled to bring their claim separately because they have an individually enforceable right. *Id.*

The insurance cases cited by National Union in support of its aggregation argument illustrate this point. In *Sallada v. Nationwide Mut. Ins. Co.,* CV–99–0381, 1999 U.S. Dist. LEXIS 21670, at *1–5 (E.D. Pa. June 2, 1999), the plaintiffs were co-insureds under an automobile insurance policy and filed an equitable claim to reform the policy's coverage. *Id.* at *5–8. The district court permitted aggregation because the plaintiffs were joint owners of the policy and reformation with respect to one would necessarily change the coverage for the other. *Id.* Similarly, in *Phoenix Ins. Co. v. Woosley,* 287 F.2d 531, 532–33 (10th Cir.1961), the insured under a fire insurance policy partially assigned his single insurance claim to nine different creditors. The insured and the creditors jointly owned the claim, just as if they jointly owned a piece of property. *Id.* The court permitted aggregation because the creditors' joint ownership necessarily gave rise to a common and undivided interest in the claim. *Id.*

This case is distinguishable from *Sallada* and *Woosley.* Unlike the plaintiffs in *Sallada,* ESI and the class do not jointly own a single insurance policy. Nor do they jointly own a single insurance claim like the plaintiffs in *Woosley.* Rather, United Artists owns the policy, and ESI and the other class members have separate and distinct claims to the proceeds of that policy for $500.00 each plus interest. The class members' similar interest stems from the similar wrong they suffered from United Artists and not from any singular

right against United Artists that they jointly hold. National Union has cited no authority supporting aggregation of claims here, and the garnishment action must be remanded for lack of subject matter jurisdiction.

## II. The Declaratory Judgment Action

National Union has not met its burden of establishing that the Court has subject matter jurisdiction over its separately-filed declaratory judgment action. Specifically—with respect to Defendant United Artists—National Union has failed to establish an actual controversy. With respect to ESI and the class, the non-aggregation rule precludes the exercise of jurisdiction. The Court will therefore grant ESI's Motion to Dismiss.

### A. Legal Standard: Rule 12(b)(1) Motions to Dismiss

A motion to dismiss under Rule 12(b)(1) addresses the court's subject matter jurisdiction, derived from Article III of the United States Constitution. As noted above, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is assumed that a cause lies outside this jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.* "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

When a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). When the motion is a factual attack on subject matter jurisdiction, a defendant may "rely on affidavits or any other evidence properly before the Court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* No presumption of truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of jurisdiction. *Thornhill*, 594 F.2d at 733.

### B. Analysis

#### 1. The Actual Controversy Requirement: United Artists

National Union has failed to meet its burden of showing an actual controversy between it and Defendant United Artists within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. Absent such a showing, the Court may not exercise subject matter jurisdiction over the purported "dispute" between National Union and United Artists.

The Declaratory Judgment Act creates a federal remedy, but is not itself a basis for federal jurisdiction. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983). Before declaratory relief may be granted, federal subject matter jurisdiction requirements must be satisfied. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). For cases founded on diversity jurisdiction, the parties must be of diverse citizenship and the complaint must meet the requisite amount in controversy. *See* 28 U.S.C. § 1332(a). Further, whether the com-

plaint is based on diversity or federal question jurisdiction, the declaratory judgment plaintiff must establish an actual controversy. *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir.1981)

■■■ Under the Declaratory Judgment Act, a federal court may "declare the rights and other legal relations" of parties to a "case of actual controversy." 28 U.S.C. § 2201. The purpose of the Act is "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *Societe de Conditionnement*, 655 F.2d at 943 (9th Cir.1981). "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Id.* at 942. The party seeking the declaration bears the burden of establishing justiciability. *Cardinal Chem. v. Morton Int'l*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree . . . ." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* "If the defendant's actions cause the plaintiff to have a 'real and reasonable apprehension that he will be subject to liability,' the plaintiff has pre-

sented a justiciable case or controversy." *Spokane Indian Tribe v. United States*, 972 F.2d 1090 (9th Cir.1992).

■■■ National Union has not shown that a justiciable controversy exists between it and United Artists. Its Complaint does not allege that United Artists disputes National Union's denial of coverage. Nor does it allege that United Artists is considering or has threatened legal action against National Union. Further, National Union makes no attempt in its motion papers to meet its burden of establishing an actual controversy. It simply argues without explanation that ESI's case or controversy argument is "without merit." (National Union's Resp. to ESI's Mot. to Dismiss at 7 n. 4 [CIV–03–2417 Doc. # 9].) United Artists has not answered the Complaint,[2] and there is no indication that it intends to dispute coverage. While it may be unusual for a corporate insured to acquiesce in an insurer's denial of coverage, National Union bears the burden of establishing a justiciable controversy, and has failed to do so.

*Atlanta International Insurance Co. v. Atchison, Topeka, and Santa Fe Railway Co.*, 938 F.2d 81, 83–84 (7th Cir.1991) is instructive here. In that case, Atlanta International Insurance Company ("Atlanta") insured the Atchison, Topeka, and Santa Fe Railway Company against claims arising out of Santa Fe's railroad operations. *Id.* A federal jury sitting in the Eastern District of Texas found Santa Fe in violation of the Sherman Act, 15 U.S.C. § 1, for conspiring with other railroads in restraint of trade. *Id.* The court entered judgment against Santa Fe in the amount of

**2.** The Court file does not reflect service on United Artists, although copies of some filings by National Union reflect that they were mailed to the attorney who represented United Artists in state court. While it is nonspecific in its identification of the Defendant for whom service was accepted, the Court has interpreted the Affidavit of Service and Waiver of Service filed on December 30, 2003 as service on ESI only. It was signed by ESI's counsel who presumably was only authorized to accept service on behalf of ESI.

$750,150,000.00. *Id.* After the verdict, Santa Fe sent letters to its nearly 170 general liability insurers notifying them of the verdict and noting that there was a possibility of settlement discussions in the near future. *Id.* Santa Fe also solicited the insurers' views on the terms of the policies. *Id.* When Atlanta received the letter, it brought suit against Santa Fe for a declaration of non-coverage. *Id.*

The Seventh Circuit affirmed the dismissal of Atlanta's declaratory judgment complaint because no actual controversy existed. *Id.* at 84. The district court held that the mere rendering of a judgment against the insured (Santa Fe) did not create an actual controversy with the insurer (Atlanta). *Id.* Relying on an Illinois Supreme Court decision, it found that no actual controversy arises until an insured calls upon the insured to either pay or defend a claim. *Id.* The Seventh Circuit found that Santa Fe's letter was "a far cry from a demand for payment, or even a threat to make a demand for payment." *Id.* at 84. "[T]he requisite 'injury'—a claim for payment by Santa Fe—neither occurred nor was it immediately threatened by any of Santa Fe's actions." *Id.* at 83; *see also TIG Ins. Co. v. Insinger Mach. Co., Inc.,* No.Civ.A. 97–3164, 1998 WL 748287, at *4 (E.D.Pa. Oct.27, 1998) (dismissing insurer's declaratory judgment action for lack of controversy where insured had not demanded coverage and admitted that it had no claim for coverage).

This case is even less compelling than *Atlanta International Insurance Co.* Unlike the insurer in that case, National Union has not produced any evidence of communications between it and United Artists regarding coverage. It relies solely on the fact that the state court entered a judgment against United Artists. The judgment alone is not enough to show a definite and concrete controversy between the parties. The Court need not speculate on the reasons for United Artists' silence or National Union's failure to effect service, though it likely stems from the fact that United Artists is currently in bankruptcy and the fact that the lift-stay order of the bankruptcy court specifically limited recovery to United Artists' insurance policies. National Union bears the burden of establishing an actual controversy and has not shown that the alleged "dispute" between it and United Artists is real and immediate.

## B.  ESI and the Class

As to the remaining Defendants named in National Union's Complaint—ESI and the absent class members—National Union has failed to satisfy the minimum amount in controversy. As with the garnishment action, the non-aggregation rule precludes the exercise of diversity jurisdiction.

The Seventh Circuit's opinion in *Motorists Mutual Insurance Co. v. Simpson,* 404 F.2d 511, 513 (7th Cir.1968) is directly on point. In that case, an automobile insurer brought a declaratory judgment action against two injured parties seeking a declaration of non-coverage. *Id.* at 512. Neither party's claim against the insurer exceeded the jurisdictional amount. *Id.* The court held that "when two or more claimants are joined as defendants in an insurer's declaratory judgment suit, the pecuniary test of jurisdiction depends on whether the potential liability of the insurer is joint or several." *Id.* at 513. If the liability is joint, "the matter in controversy between the insurer and the defendants is the sum of the potential claims." *Id.* By contrast, "if the insurer's potential liability is several, jurisdiction under section 1332(a) can be sustained only against those defendants whose respective controversies individually involve matters exceeding the jurisdictional amount." *Id.* Applying this rule, the

court found that the insurer did not satisfy the jurisdictional minimum because its liability was several. *Id.* The injured parties' claims could not be aggregated. *Id.*

This approach makes sense when viewed in light of the nature of a declaratory judgment action. As professors Wright, Miller, and Cooper have commented in a related context, "[s]ince the declaratory judgment action device is not intended to extend the subject matter jurisdiction of the federal courts, the amount in controversy should be determined in terms of what actually is being litigated." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 3710 (3d ed.1998). In suits like the one at issue here, "the precise issue is whether the insurer is liable for a particular loss." *Id.* "[T]he declaratory judgment action cannot be brought unless a claim has been asserted, or it is relatively certain that it will be asserted against the insured." *Id.* As a result "it is not unreasonable to require that the underlying claim be valued for the purposes of determining the amount in controversy." *Id.*

Other jurisdictions are in accord with the Seventh Circuit. In *U.S.A.A. Insurance Co. v. London,* Civ.A. No. 88–9496, 1989 WL 55391, at *1 (E.D.Pa.1989) an insurance company filed an action seeking a declaratory judgment regarding its rights and liabilities under an automobile insurance policy. The three defendants were passengers in a vehicle driven by the insured at the time of the accident. *Id.* None of their claims for benefits exceeded the federal jurisdictional amount. *Id.* at *2. The court refused to allow the insurance company to aggregate the defendants' separate claims to meet the jurisdictional amount. *Id.* Although the claims arose from a single accident, they were distinct. *Id.* Any liability would have been several rather than joint. *Id.;see also* *Travelers Indem. Co. of Illinois v. Clark,* Civ.A. No.94–CV–1675, 1994 WL 384722, at *3 (E.D.Pa. July 19, 1994) (insurer seeking a declaration of nonliability may not aggregate the several claims of parties injured by the insured to establish jurisdiction); *American Standard Ins. Co. v. Rogers,* 123 F.Supp.2d 461, 463–65 (S.D.Ind.2000) (same).

Although the Ninth Circuit has not specifically considered whether an insurance company plaintiff in a declaratory judgment action may aggregate multiple defendants' separate and distinct claims to meet the jurisdictional amount, case law suggests that the plaintiff may not. In *Budget Rent–A–Car. Inc. v. Higashiguchi,* 109 F.3d 1471 (9th Cir.1997), a self-insured car lessor sought a declaratory judgment that it had no duty to defend or indemnify a lessee and passenger against possible claims by assault victims. The defendants (the victims) moved to dismiss for lack of subject matter jurisdiction, arguing that the amount in controversy did not exceed the $50,000.00 jurisdictional limit in effect at the time. *Id.* at 1473. Budget argued that the amount in controversy was "the value of the object of the litigation" from its viewpoint; that is, its maximum potential liability. *Id.* The Ninth Circuit rejected this argument and held that the "[when] the applicability of [the insurer's] liability coverage to a particular occurrence is at issue [in the insurer's declaratory judgment action], the amount in controversy is the value of the underlying potential tort action." *Id.* Because each defendants' underlying tort claims in fact amounted to more than $50,000.00, the Court found that Budget had satisfied the jurisdictional threshold. *Id.* at 1474.

Because jurisdiction otherwise existed, the Court in *Budget Rent–A–Car* found no need to reach the question of whether

"Budget may calculate the amount in controversy by aggregating its potential liabilities to different defendants." *Id.* at 1474. Nonetheless, the fact that the Court analyzed jurisdiction from the perspective of each declaratory judgment defendant's potential recovery suggests that the Court would not exempt declaratory judgment actions from the non-aggregation rule.[3] Further, the Ninth Circuit has been suspicious of attempts to evade the non-aggregation rule. In *Snow v. Ford Motor Co.,* 561 F.2d 787, 788 (9th Cir.1977), the class-action plaintiffs brought a claim for injunctive relief. The defendant argued that the amount in controversy should be determined from its point of view—the value of the business right that the plaintiffs sought to enjoin. *Id.* The Ninth Circuit held that the amount in controversy must be determined from the class-action plaintiffs' or claimants' viewpoint, rather than the class-action defendant's viewpoint of the total monetary impact. *Id.* at 790. "The doctrine of *Snyder,*" the Court found, "cannot so easily be evaded." *Id.*

For the reasons stated above in the section discussing the garnishment action, National Union may not aggregate the claims of ESI and the class to meet the minimum amount in controversy. Those claims are separate and distinct, not common and undivided. Further, because the Court does not have subject matter jurisdiction over United Artists, National Union's supplemental jurisdiction argument fails. Finally, ESI's abstention argument is moot in light of the Court's findings. *See United Artists Theatre Circuit, Inc.,* 147 F.Supp.2d 965, 970 ("Subject matter

jurisdiction is an issue logically prior to the propriety of abstention.")

Accordingly,

**IT IS ORDERED** that former Case No. CIV–04–0010–PHX–SRB, now consolidated with CIV–03–2417–PHX–SRB, is severed and **REMANDED** to Maricopa County Superior Court for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that ESI's Motion to Dismiss [Doc. # 3–1] is **GRANTED,** Plaintiff National Union Fire Insurance Company, Inc.'s Declaratory Judgment Complaint in CIV–03–2417–PHX–SRB [Doc. # 1] is hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that ESI's alternative Motion for Abstention [Doc. # 3–2] is **DENIED AS MOOT.**

---

3. National Union argues that *Budget* does not apply here because the it "involved a prejudgment declaratory judgment action in which the insured's liability had yet to be determined," while "this action is being pursued after National Union's insured has already been adjudged liable." (National Union's Resp. to ESI's Mot. to Dismiss at 6 n. 2.) This argument is unpersuasive. There is no reason why a different standard for measuring the amount in controversy should apply once the insured's liability in the underlying action has been reduced to judgment. National Union has not cited any case law support of its distinction and fails to explain why the distinction is significant.